1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10    RONALD LOSEL,

11              Plaintiff,                    No. CIV-S-11-1999 KJM-DAD
              vs.
12
      CHASE BANK USA, NA and DONALD
13    PALMER,

14              Defendants.                   ORDER
      _____/
15

16              On May 2, 2011, plaintiff Ronald Losel initiated this action in Sacramento

17    County Superior Court, alleging defendant Chase Bank USA, N.A. ("Chase" or "defendant")

18    and Donald Palmer violated state law by enticing him into a transaction that eventually cost him

19    several thousand dollars. Chase filed a notice of removal on July 29, 2011.  (ECF 1.)  In its

20    removal notice, Chase asserts that federal jurisdiction exists under the Class Action Fairness Act

21    ("CAFA"), 28 U.S.C. § 1332(d), and, in the alternative, that plaintiff's complaint is completely

22    preempted by the National Bank Act ("NBA"), 12 U.S.C. § 21 *et seq.*  The court finds that

23    removal was improper and, therefore, the case is remanded to Sacramento County Superior

24    Court.[1]

25    _____

26             [1] Chase has moved to dismiss and strike portions of plaintiff's complaint. (ECF 15, 17.)
      Because the court here determines removal was improper, it does not reach these motions.

                                             1

I.    FACTUAL ALLEGATIONS

Plaintiff alleges that he responded to an advertisement for free pain relief treatment offered by Dr. Donald Palmer. (ECF 1, Exhibit A ¶¶ 17, 18.) Dr. Palmer, along with many other doctors in California, partners with Chase to offer interest-free financing for certain elective medical procedures. (*Id.* ¶ 19.) In order to receive the free treatments, plaintiff was required to sign up for a package of fourteen treatments at a cost of $3,877. (*Id.* ¶ 18.) Plaintiff claims that he did not realize that by signing up for the free treatments he was incurring $3,877 in debt. (*Id.* ¶ 20.) When he noticed the charge, he contested it and, as a result, the interest rate rose from 0% to approximately 24%. (*Id.* ¶¶ 22-25.) Plaintiff claims this transaction was structured by defendants to deceive consumers into defaulting and thereby incurring high interest fees. (*Id.*) He seeks to represent a class of similarly situated California residents who entered into interest free financing agreements with defendant Chase under which Chase subsequently began charging interest. (*Id.* ¶ 12.)

II.    REMOVAL STANDARD

The removal statute, 28 U.S.C. § 1441(a), provides: "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988); *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)). There is a "strong presumption" against removal jurisdiction, which "means that the defendant always has the burden of establishing that removal is proper." *Id.*; *see also Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("[U]nder CAFA the burden of establishing

2

1  removal jurisdiction remains . . . on the proponent of federal jurisdiction."). Furthermore,

2  "removal jurisdiction is strictly construed in favor of remand." *Nasrawi v. Buck Consultants,*

3  *LLC*, 776 F. Supp. 2d 1166, 1084 (E.D. Cal. 2011) (citing *Harris v. Bankers Life and Cas. Co.*,

4  425 F.3d 689, 698 (9th Cir. 2005)). Accordingly, "the court resolves all ambiguity in favor of

5  remand to state court." *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

6  III.   <u>ANALYSIS</u>

7          In is notice of removal, defendant proposes two bases for federal subject matter

8  jurisdiction: The Class Action Fairness Act ("CAFA") and plaintiffs' claims' complete

9  preemption by federal law. The court finds neither basis provides jurisdiction, as discussed

10  below.

11          A.    Class Action Fairness Act

12          CAFA vests the district court with "original jurisdiction of any civil action in

13  which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest

14  and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State

15  different from any defendant." 28 U.S.C. § 1332(d)(2)(A). "Under CAFA, the burden of

16  establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction."

17  *Abrego Abrego*, 443 F.3d at 685. Therefore, a defendant must prove: (1) the amount of matters in

18  controversy exceeds $5,000,000[2]; and (2) any member of plaintiff's class is a citizen of a State

19  different from any defendant.

20  /////

21

22          [2] The court notes that plaintiff has amended his complaint to plead damages above this
jurisdictional amount. This amendment has no effect on the analysis here. "A district court's
23  subject matter jurisdiction is determined on the basis of the complaint at time of removal, not as
subsequently amended." *Pineda v. CitiMortgage, Inc.*, No. 12–0998–SC, 2012 WL 2070317, at
24  *3 (N.D. Cal. June 8, 2012) (citing *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159
F.3d 1209, 1213 (9th Cir.1998)); *see also Williams v. Costco Wholesale Corp.*, 471 F.3d 975,
25  976 (9th Cir. 2006) ("We have long held that post-removal amendments to the pleadings cannot
affect whether a case is removable, because the propriety of removal is determined solely on the
26  basis of the pleadings filed in state court.").

1	 In determining whether the amount in controversy exceeds $5,000,000, courts

2	apply different standards of proof depending on whether plaintiff has claimed a specific amount

3	in controversy. *See Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007).

4	Where, as here, "the complaint does not specify the amount of damages sought, the removing

5	defendant must prove by a preponderance of the evidence that the amount in controversy

6	requirement has been met." *Abrego Abrego*, 443 F.3d at 683 (citing *Gaus*, 980 F.2d at 566–567).

7	The preponderance of the evidence standard requires a defendant to "provide evidence

8	establishing that it is more likely than not that the amount in controversy exceeds [$5,000,000]."

9	*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  A defendant can satisfy

10	this burden by submitting evidence outside the complaint, including by affidavit or declaration of

11	expected damages. *See Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d 395, 397 (9th Cir. 2010)

12	(holding that declaration established amount in controversy for removal of case); *Saulic v.*

13	*Symantec Corp.*, No. SA CV 07-610 AHS (PLAx), 2007 WL 5074883, at *8 (C.D. Cal. Dec. 26,

14	2007) (finding that defendant satisfied burden through affidavit stating it billed customers more

15	than $5 million for premium services during the purported class period).

16	 In this case, the defendant must establish by a preponderance of the evidence that

17	the amount in controversy exceeds $5,000,000. In his complaint, plaintiff alleges he was enticed

18	into an elective medical procedure that was free but, when it did not work, he ceased the

19	procedures and contested the payment for the treatments he did not receive. The procedure was

20	financed through Chase. The plaintiff alleges his damages consist of a loan principal of $3,877

21	and the interest that began to accrue when he contested the payment. (ECF 1, Exhibit A ¶¶ 19,

22	20, 25). Plaintiff claims that he is a member of a class that "includes over ten thousand

23	members." (*Id.* ¶ 15.) However, plaintiff's own damages are tied to the fees he paid specific to

24	his procedure and he does not allege that those numbers necessarily generalize to the entire

25	putative class. The common injury suffered is not a specific amount of damages but rather being

26	subject to a springing interest rate. *See Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S.Ct.

4

1  2541, 2251 (2011) ("Commonality requires the plaintiff to demonstrate that the class members

2  have suffered the same injury." (quotation omitted)). Although defendant claims the amount in

3  controversy exceeds $5,000,000, nothing in the record supports this conclusion.  Plaintiff does

4  not state explicitly his estimate of the total damages of the class; at most, he says the other ten

5  thousand are "similarly situated" persons who "entered into an agreement with the CHASE

6  Defendants" and were also "resident of California and at least 65 years old, or older." (ECF 1,

7  Exhibit A, ¶¶ 12(a)-12(a)(I)). In their removal notice, Chase suggests that because plaintiff paid

8  $1,000 in fees and he alleges ten thousand similarly situated individuals, the court can simply

9  multiple his fees by the number of class members alleged to arrive at the jurisdictional amount.

10  (ECF 1 at 4.) This fails to take account of the common injury plaintiff alleges which is the

11  springing interest rate; the fees that accrue will vary based on the underlying value of the

12  financing transaction specific to each patient.  Defendant has failed to carry its burden to prove

13  by a preponderance of evidence that the amount in controversy exceeds $5,000,000.

14        B.    Preemption by National Bank Act

15        In most cases, "[t]he presence or absence of federal-question jurisdiction is

16  governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists

17  only when a federal question is presented on the face of the plaintiff's properly pleaded

18  complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The plaintiff is the master

19  of his claim, and he can choose to avoid federal jurisdiction by relying exclusively on state law.

20  *Id.* However, "[u]nder the artful pleading doctrine, a plaintiff may not defeat removal by

21  omitting to plead necessary federal questions in a complaint.  The artful pleading doctrine allows

22  courts to delve beyond the face of the state court complaint and find federal question jurisdiction

23  by recharacterizing a plaintiff's state-law claim as a federal claim." *Lippitt v. Raymond James*

24  *Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003) (citations, quotations and alterations

25  omitted).  The artful pleading doctrine applies to "complete preemption cases."  *Id.*  Courts

26  should invoke the artful pleading doctrine "only in limited circumstances as it raises difficult

1   issues of state and federal relationships and often yields unsatisfactory results." *Id*.  As

2   explained below, here, there is no federal claim underlying plaintiff's state law claims.

3           A state law claim may "arise under" federal law "where federal law completely

4   preempts state law." *ARCO Envtl. Remediation, L.L.C. v. Dept. of Health and Envtl. Quality*,

5   213 F.3d 1108, 1114 (9th Cir. 2000).  "Preempted state law claims may be removed to federal

6   court only in the rare instances where Congress has chosen to regulate the entire field." *Id*.

7   Section 85 of the NBA limits the amount of interest a national bank may charge, and section 86

8   provides the exclusive remedy for violations of this section.  12 U.S.C. §§ 85-86.  In *Beneficial*

9   *Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003), the Supreme Court construed sections 85 and 86

10  of the NBA to preempt state law claims for usury against national banks.  In *Beneficial*,

11  individual taxpayers brought a state law claim against a national bank for, *inter alia*, usurious

12  interest rates.  *Beneficial*, 539 U.S. at 4.  The Court found that the complaint "expressly charged

13  [defendants] with usury," explaining that it "sought relief for 'usury violations' and claimed that

14  [defendants] 'charged . . . excessive interest in violation of the common law usury doctrine.'"  *Id*.

15  at 9.  Because the state law claim alleged usury, the Court held it was properly removed to

16  federal court.  *Id*. at 11.

17          On its face, plaintiff's complaint does not state a claim that "arises under" federal

18  law.  In its Notice of Removal, Chase argues that plaintiff's complaint "alleges that consumers

19  enrolled in the [financing] program who make late payments are charged excessive penalty

20  rates."  (ECF 1 at 5.)  Chase contends that paragraphs 25 and 30 of plaintiff's complaint support

21  a claim for usury.  (*Id*.)  Chase does not specify which of plaintiff's claims is based on usury,

22  implicitly or otherwise, so the court examines the two claims that could conceivably anchor a

23  usury claim.[3] (ECF 1.)

24  /////

25  

26        [3] Plaintiff's third and fourth causes of action are for Elder Abuse and his fifth is against
Dr. Palmer. (ECF 1, Exhibit A.)

1           1.      Breach of Implied Covenant

2           A cause of action for breach of implied covenant of good faith and fair dealing is

3 created by California law.  *See Racine & Laramie, Ltd. v. Dept. of Parks and Recreation*, 11 Cal.

4 App.4th 1026, 1031-32 (1992).  Plaintiff's covenant of good faith and fair dealing claim avers

5 that Chase's actions were intended to force plaintiff to make late payments and thereby trigger

6 penalty fees.  (ECF 1 at Ex. A ¶¶ 26-35.) While the NBA preempts a state law claim of usury

7 alleged against a national bank, Chase has not demonstrated that plaintiff is alleging a usury

8 claim in his first cause of action.  *See Beneficial Nat'l Bank*, 539 U.S. at 4, 9 (finding allegations

9 of a usury violation, the Court explained the complaint alleged "the bank's interest rates were

10 usurious" and the bank violated the "common law usury doctrine").

11          While Chase argues that plaintiff's complaint "alleges that consumers enrolled in

12 the [financing] program who make late payments are charged excessive penalty rates," (ECF 1 at

13 5), Chase mischaracterizes plaintiff's claim for breach of the implied covenant of good faith and

14 fair dealing.  Plaintiff's complaint does not challenge the legality of the interest rate charged by

15 Chase.  Plaintiff alleges that Chase breached an implied covenant by preventing him from

16 receiving the benefits of the contract and that as a result he was harmed by Chase's conduct.  For

17 example, in paragraph 29 of his complaint, plaintiff alleges that "[i]f the consumer failed to make

18 minimum monthly payments on time, [Chase] retained the right to terminate the terms of the

19 loan and apply a higher APR to the remaining loan balance."  (ECF 1 at 20.)  Plaintiff is not

20 seeking to recover because Chase applied an excessive interest rate; rather, plaintiff challenges

21 the entire transaction as deceptive.  *See Cross-Country Bank v. Klussman*, No. C–01–4190–SC,

22 2004 WL 966289, at *5 (N.D. Cal. Apr. 30, 2004) (rejecting preemption argument where

23 defendant improperly characterized plaintiff's allegations as a usury claim). Moreover, plaintiff's

24 use of the word "high" to describe the interest rate does not automatically translate to a usury

25 claim.  Read in context, the complaint's statements regarding the interest rate and late fees are

26 contextual and merely inform the court of the consequences of Chase's alleged breach of implied

1  covenant of good faith and fair dealing.  *See Gebhard v. Bank of America, N.A.*, No.

2  2:09-CV-03159 GEB-JFM, 2010 WL 580995, at *6 (E.D. Cal. Feb. 11, 2010) (While plaintiffs

3  alleged defendant "'[a]ttempted and did place plaintiff into usurious transactions...,' [p]laintiffs

4  . . . are not seeking to recover because BofA applied an interest rate that exceeded any statutory

5  maximum.  Rather, Plaintiffs' allegation is that Defendant breached an implied covenant by

6  placing them into a financially ruinous transaction.").

7           Because Chase has not shown that plaintiff's breach of implied covenant of good

8  faith and fair dealing claim is preempted by the NBA, this claim does not provide a basis for

9  removal.

10                  2.      California State Law Business Practice Claim

11          Plaintiff's second claim asserts violations of California Business & Professions

12  Code § 17200 *et seq.* ("UCL").  To bring "a UCL claim, a plaintiff must show either an (1)

13  unlawful, unfair or fraudulent business act or practice, or (2) unfair, deceptive, untrue or

14  misleading advertising.  Because section 17200 is written in the disjunctive, it establishes three

15  varieties of unfair competition - acts or practices which are unlawful, or unfair or fraudulent.  A

16  practice is prohibited as unfair or deceptive even if not unlawful or vice versa."  *Lippitt*, 340 F.3d

17  at 1043 (9th Cir. 2003) (quotations and citations omitted).

18          Plaintiff alleges Chase committed unlawful business acts, which resulted in

19  plaintiff's being charged "high interest rates."  (ECF 1 at Ex. A ¶ 37.)  Plaintiff provides three

20  examples of Chase's alleged conduct:

21          [1] misrepresenting the 0% interest financing promotion to [Plaintiff].
             . . ;

22
             [2] failing to disclose material facts about the 0% interest financing
23           promotion, including but not limited to, the fact that [Chase's]
             business model is designed to trigger the imposition of high interest
24           rates; and

25

26  /////

8

[3] knowingly paying the medical provider for all services before the medical provider has provided any services.

*Id.* Plaintiff has alleged Chase's business acts are "unlawful and unfair" under California law, and provided examples of the high interest rate charged as a result of Chase's alleged deceptive practices. (ECF 1 at Ex. A ¶ 37); *Lippitt*, 340 F.3d at 1037, 1040. As previously discussed, plaintiff has not alleged the interest rates charged by Chase are illegal; rather he asserts a UCL claim alleging Chase's business practices are unlawful and unfair and as a result plaintiff is charged a higher interest rate than anticipated. *See Cortazar v. Wells Fargo & Co.*, No. C 04–894 JSW, 2004 WL 1774219, at *4-5 (N.D. Cal. Aug. 9, 2004) (a complaint challenging "the unfair and deceptive manner in which [defendant] induced borrowers to enter into unfavorable loans with 'above-market interest rates'"... did not "compel the conclusion" that plaintiffs were asserting the "rates, points, and fees [were] usurious").

Under the well-pleaded complaint rule, plaintiff's UCL claim seeks only to invoke state law. Further, plaintiff's UCL claim is not properly interpreted as a usury claim and therefore is not preempted by the NBA. As such, this claim too does not provide a basis for removal.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, the court finds that plaintiff has not alleged a claim of usury against Chase. Because this court is without jurisdiction to hear the case, it is remanded to the Sacramento County Superior Court. This case is closed.

IT IS SO ORDERED.

DATED:  August 30, 2012.

_____
UNITED STATES DISTRICT JUDGE